[Civ. No. 7000.  Third Dist.  Jan. 4, 1944.]

KIRKMAN CORPORATION (a Corporation), Appellant, v. VERNON P. OWENS et al., Respondents.

194

J. Kingsley Chadeayne for Appellant.

Floyd H. Bowers for Respondents.

SCHOTTKY, J. pro tem.—Appellant corporation commenced an action against respondents, who were copartners, alleging that it had since February 1, 1941, been the owner of certain nursery stock, that prior to February 2, 1943, respon-

dents came into possession of said nursery stock; that appellant was at all times entitled to the possession of said nursery stock and demanded possession thereof from respondents, but that respondents refused to deliver same to appellant; and that by reason of the conversion of said nursery stock by respondents, appellant had been damaged in the sum of $5,000.

Respondents denied all the material allegations of the complaint and also set up as a special defense that they had performed labor and furnished materials in the growing, irrigating, cultivation, fertilizing, digging, hauling, sorting and preserving of said nursery stock from May, 1942, to the filing of complaint (Feb. 16, 1943), and that they were detaining said nursery stock by virtue of a lien for such labor and material under section 3051 of the Civil Code. Respondents set forth as an additional defense that appellant's claim of ownership was based upon a certain written contract between it and one M. Nishimura, a minor of eighteen years, and that said minor had disaffirmed said contract with appellant and appellant had no lawful claim to said nursery stock.

Following the trial of the action, the court found that it was not true that plaintiff was the owner of the nursery stock; that prior to February 5, 1943, respondents lawfully came into possession of same, that on February 5th and also on or about February 9, 1943, appellant demanded possession thereof but respondents refused to deliver it to appellant, but it was not true that respondents on February 2, 1943, or at any other time converted said nursery stock; that it was not true that appellant had been damaged in the sum of $5,000, or any other sum. The court found further that during the period between May 11, 1942, and the filing of the complaint, respondents had at the special instance and request of appellant performed the labor and furnished the materials specified in the special defense as hereinbefore set forth, of the reasonable value of $1,044.64, and that respondents had detained said nursery stock under a valid claim of lien for said labor and materials and had offered to deliver said nursery stock to appellant upon payment of the amount of their said claim, but that appellant had refused to pay said claim or any part thereof; that all right or title of appellant in said nursery stock is subordinate to the claim of lien of respondents. The conclusions of law were that appellant corporation should take nothing by reason of said action and that respondents

should have judgment for their costs. Judgment was entered accordingly and this appeal is from said judgment.

We glean from the evidence in the case that appellant entered into a contract with the Nishimuras, father and son, under which the former was to furnish seeds for the growing of special nursery root stock; that the Nishimuras were to plant said seeds and raise the stock on land occupied by them, and, at the proper time, bud same to peaches, etc., with buds furnished by appellant; that title to the said nursery stock was at all times to remain in appellant, and at the proper time the budded trees were to be delivered to appellant; that before this contract was fully performed the Japanese were evacuated, and the Nishimuras leased to respondents all of their land except a portion upon which the nursery stock in controversy was growing; that thereafter respondents took care of said nursery stock, and eventually dug same and "heeled it in" at Smyth's nursery yards, where further labor was performed upon it; that appellant eventually demanded delivery of said stock to it, but that respondents refused to make delivery until paid the sum of $1,044.64 which they claimed on account of labor and materials furnished by them, in the growing, preserving, digging, hauling and caring for same from the time of the evacuation of the Japanese to date; that appellant refused to pay the amount claimed by respondents or any amount other than $14, claiming that respondents had undertaken to complete the contract entered into by appellant with the Nishimuras, and that, as appellant had made certain money advances to the Nishimuras, there was a balance of but $14 unpaid under said contract. Respondents denied that they had assumed to perform that contract and contended that at appellant's request they had performed the services and made the expenditures for which they claimed compensation. They therefore claimed a lien upon said nursery stock and refused delivery of same to appellant. Appellant then commenced this action. Respondents made no claim of ownership of said nursery stock and in fact conceded in their written lien that appellant was the owner or reputed owner of same; and no one else has laid claim to same.

On this appeal appellant attacks a number of rulings of the trial court upon offers of testimony. Appellant offered in evidence a written agreement under the terms of which one M. Nishimura agreed, among other things, to grow certain

nursery stock for appellant from seeds furnished by appellant, said seeds and trees to remain at all times the property of appellant, and said nursery stock to be grown upon the land farmed by Nishimura, the space for the description of the land being left blank. Respondents objected to the introduction of this agreement (Plaintiff's Exhibit A for identification) upon the ground chiefly that it was not a contract because the property upon which the nursery stock was to be grown was not described therein, although some other grounds of objection were stated. The court sustained the objection and refused to admit the agreement in evidence. This was clearly error as the agreement was relevant and important to show the basis on which the nursery stock was produced, and as a link in plaintiff's claim of title thereto. The omission of the description of the land upon which the nursery stock was to be grown did not invalidate the agreement and it was entirely proper to supply this omission by parol testimony, if it became necessary to supply it in order to identify the nursery stock. ■ Appellant offered such testimony and was met by respondents' objection that plaintiff was attempting to vary the terms of a written agreement by parol testimony. This objection was likewise sustained by the court. The second ruling was clearly erroneous as there was here no attempt to vary the terms of the written instrument, but merely to supply the description of the land upon which the nursery stock was to be grown. ■ Appellant also offered in evidence a document marked as Plaintiff's Exhibit D, for identification, which was a preliminary memorandum on the printed tag of Nishimura Nursery, signed by appellant and M. Nishimura, and relating to the growing of nursery stock. Respondents' objection that it was immaterial and irrelevant was sustained by the court, in which ruling error was again committed. After these various objections had been sustained by the court, appellant made this final offer:

"I would offer to prove by the testimony of Mr. Kirkman that the seed and the growing of trees mentioned in those plaintiff's Exhibit A and plaintiff's Exhibit D are the same trees that are mentioned in the complaint, that Mr. Kirkman at all times was familiar with the planting, with the growth, with the budding, and that those seeds and buds developed into the trees that are mentioned in the Complaint."

Respondents again objected and the objection was sustained by the court.

It is apparent that both counsel for respondents and the court were laboring under the mistaken impression that the contract in question was a contract relating to real property, when it was in fact by its terms merely a contract for the growing of nursery stock, and, under its terms and the circumstances here present, it related to personal property. Appellant claimed that Nishimura agreed to grow said nursery stock for it under the terms of said agreement, and it was entitled to have received in evidence the agreement and memorandum relating thereto in order to establish its title. No citation of authority is necessary to support so elementary a proposition.

Curiously enough, respondents themselves offered in evidence a purported disaffirmance by M. Nishimura, a minor, of the very contract which they had been successful in keeping out of the record, which said disaffirmance contained the detailed description of the real property on which the nursery stock was grown. This was admitted by the court over appellant's objection. It is difficult to understand how the disaffirmance could be admissible and the contract itself not admissible, especially since both were pleaded by respondents. Appellant claimed the nursery stock agreement was with M. Nishimura, the father, and respondents claimed it was with M. Nishimura, the son, a minor of the age of eighteen years. Respondents evidently sought to show appellant's lack of title to the nursery stock by offering the disaffirmance in evidence. It is extremely doubtful whether third persons such as respondents could rely upon the disaffirmance, but even if they could, this purported disaffirmance does not meet the requirements of section 35 of the Civil Code which provides that a contract made by a minor ''may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received, or paying its equivalent.'' There is no evidence in the record of any such restoration of consideration or payment of the equivalent to appellant. The record merely shows that the Japanese were evacuated from the territory in 1942 and could no longer care for said nursery stock, and the purported disaffirmance merely tended to show that M. Nishimura, the minor, abandoned any interest in said nursery stock. It could not have the effect of depriving appellant of such title to the stock as it may have had.

Appellant contends that the rights of respondents in

said nursery stock were subject to the agreement between appellant and M. Nishimura. Mr. Kirkman, president of appellant corporation, testified that respondents were advised of said agreement in May of 1942, and that he at all times insisted that this agreement be complied with. Respondents, however, denied this and insisted that they did not know of said agreement and that they performed the labor on the nursery stock at Mr. Kirkman's request and upon his express promise to reimburse them. This, of course, created a conflict upon that point, and the implied finding of the court, which is against the appellant, cannot be disturbed by this court.

As hereinbefore set forth, the trial court found that respondents had detained said nursery stock upon a valid claim of lien in the sum of $1,044.64 for labor and material performed and furnished by respondents at the special instance and request of appellant, and that appellant had refused to pay the amount of said lien. Appellant vigorously attacks this finding and contends (1) that under sections 3051 and 3052 of the Civil Code, respondents could have no lien on the nursery stock; (2) that if respondents ever had a right of lien it was for a lesser amount than the amount claimed and that found by the court; and (3) that by claiming an excessive lien respondents waived any right to a lien.

The portion of section 3051 of the Civil Code applicable to the lien claimed by respondents reads as follows:

"Every person who, while lawfully in possession of an article of personal property renders any service to the owner thereof, by labor or skill, employed for the protection, improvement, safekeeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him from the owner for such service."

Under said provision it was held by this court in *Golden State Orchards* v. *Harter*, 93 Cal.App. 390 [269 P. 735], that one who rendered services in the drying and processing of fruit was entitled to a lien on the fruit and the possession thereof until his proper charges were paid. (See, also, *People* v. *Photo*, 45 Cal.App.2d 345 [114 P.2d 71].) Such a lien is, however, dependent upon possession, and the law is well settled that if a lien is lost by relinquishment of possession it cannot be revived by any subsequently reacquired possession. (*People* v. *Photo, supra; Davis* v. *Young*, 75 Cal.App. 359 [242 P. 743].)

■ It is conceded by the parties and apparent from the record that the lease under which respondents took possession of the land formerly farmed by the Nishimuras specifically excluded therefrom the land upon which the nursery stock here in controversy was growing. Therefore it cannot be held that said portion of the land was in respondents' possession, and we are unable to perceive how they could acquire a lien upon said nursery stock for any labor performed thereon prior to the time they commenced digging the nursery stock at Kirkman's request. When, however, they commenced to dig it and tie it and haul it and store it in Smyth's Nursery, and during such work took possession thereof and continued to hold possession thereof, we believe they could properly claim a lien under the provisions of section 3051 of the Civil Code for the reasonable value of the services rendered during and after digging. It is not possible to tell from the record what part of the claimed lien was for services performed prior to digging and what part was for services after digging commenced; but it is clear that the court erred in finding that respondents were entitled to a lien upon said nursery stock for the full sum of $1,044.64.

■ We do not believe there is any merit in appellant's contention that in claiming an excessive lien respondents waived the right to any lien. Appellant did not offer to pay respondents for the portion of their services for which they might properly have claimed a lien, but claimed that respondents had assumed the obligations of the Nishimura contract and that they must accept the amount that would be due Nishimura for the completed contract after deducting certain payments which had been made by appellant to Nishimura. Respondents denied any connection with the Nishimura contract and declined the amount of $14 offered by appellant. If respondents were entitled to a lien they were entitled to retain possession of the nursery stock until they were offered the amount to which they were entitled. The mere fact that they may have mistakenly believed, or have been advised, that they had a lien for the entire amount claimed to be due for the services performed by them in caring for the nursery stock, would not defeat their right to a lien in the amount to which they were properly entitled, even though they filed a lien for a larger amount.

The errors hereinbefore set forth require a reversal of the

judgment and a retrial of the entire matter. Upon such retrial it can no doubt be determined upon all the evidence whether or not appellant was the owner of said nursery stock, and the amount for which respondents were entitled to a lien under Civil Code, section 3051; and all other proper issues can be disposed of fully.

The judgment is reversed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied February 2, 1944.